OPINION
Defendant-Appellant, Marcellous Lewis, appeals an Allen County Common Pleas Court decision denying his motion to withdraw guilty pleas entered on two counts of trafficking in crack cocaine and one count of intimidation of a witness and entering sentence on the same. While the trial court did not abuse it's discretion in denying Appellant's motion to withdraw his guilty pleas, the State's breach of the negotiated plea agreement to stand silent at sentencing requires this Court to vacate the sentence imposed and remand the matter to the trial court.
Facts and procedural history pertinent to the issues raised on appeal are as follows. According to the presentence investigation report prepared in this case, the Lima Allen County Drug Enforcement Agency began using a confidential informant in hopes to infiltrate the ongoing sale of drugs by Appellant in April 2001. On May 17, 2001, after several previous controlled buys using the informant, Appellant apparently became suspicious and confronted the informant with another individual. After hearing this over their electronic monitoring device, investigators drove closer to the area where the men were located and witnessed the informant being chased by Appellant and the other individual. The investigators further witnessed the informant fall and one of the parties pursuing him either inadvertently fall on top of him or intentionally jump on him. After landing on the informant, the individual immediately got up and again started running. After Appellant and the other individual fled a short distance further, Appellant stopped and was arrested. The informant's face beside his left eye was swollen as a result of the incident.
On June 14, 2001, the Allen County, Ohio grand jury returned a five count indictment against Appellant, charging him with three fourth degree felony counts of trafficking in crack cocaine, in violation of R.C.2925.03(A), (C)(4)(b), one fifth degree felony count of permitting drug abuse, in violation of R.C. 2925.13 (A), (C)(3), and one third degree felony count for intimidation of a witness, in violation of R.C.2921.03(A).
On November 13, 2001, just prior to the commencement of a jury trial on the matter, Appellant entered into a negotiated plea of guilt to two counts of trafficking in crack cocaine and one count of intimidation of a witness. In return for his pleas of guilt, the State agreed to drop the remaining charges and "stand silent except for restitution".
A sentencing hearing was scheduled for December 20, 2001. Prior to sentencing, however, Appellant moved the court to withdraw his previously given guilty pleas, claiming that he did not fully understand the import of his decision and that his counsel had advised that he could withdraw his plea at any time prior to sentencing. At the hearing on the motion, Appellant testified and partially placed blame on his attorney for his decision to plead guilty. At that time, the court granted his attorney leave to withdraw from the case since she could potentially be called as a witness and continued the matter for a later date. Thereafter, substitute counsel was appointed to represent Appellant.
Following the presentation of additional testimony at the continued motion to withdraw hearing, the trial court overruled Appellant's motion to withdraw his pleas. The matter then proceeded to sentencing, wherein the State made comments regarding the facts recited by Appellant in his effort to receive a lighter sentence for intimidation of a witness. Appellant was then sentenced to two seventeen month concurrent terms for the drug trafficking convictions and a maximum five-year term for the intimidation conviction, to be served consecutively. From these decisions, Appellant appeals, asserting two assignments of error for our review. For purposes of clarity, we have elected to discuss Appellant's second assignment first.
 Assignment of Error II
"The trial court abused it's discretion in refusing to allow Appellant to withdraw his guilty plea."
In his second assignment of error, Appellant claims that the trial court erred by not allowing him to withdraw his guilty pleas because he was advised by counsel that a guilty plea could be withdrawn prior to sentencing, he believed his plea was not voluntary, and he did not fully understand the implications of pleading guilty.
Crim.R. 32.1 reads: "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." Thus, while the rule gives a standard by which post sentence withdrawals of guilty pleas may be evaluated, i.e., the "manifest injustice" standard, the rule provides no guidelines for a trial court to use when ruling on a presentence motion to withdraw a guilty plea, as is the case herein.[1]
Although the general rule is that motions to withdraw guilty pleas before sentencing are to be freely given and treated with liberality, the right to withdraw a plea is not absolute.[2] Trial courts must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.[3] Thereafter, the decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court.[4] Accordingly, absent an abuse of discretion, an appellate court should not disturb the trial court's decision.[5] An abuse of discretion connotes that the trial court's determination was unreasonable, arbitrary, or unconscionable.[6]
Several noteworthy factors to assist in our review of the trial court's determination have been delineated by this and other courts, including: 1) whether the state will be prejudiced by withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the Crim.R. 11 plea hearing; 4) the extent of the hearing on the motion to withdraw; 5) whether the trial court gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge.[7]
In this case, an extensive Crim.R. 11 plea hearing was held on November 13, 2001. Therein the trial court afforded Appellant numerous opportunities to ask questions and made several inquiries into Appellant's understanding of the proceedings and all allied constitutional rights that he was waiving by pleading guilty, to which Appellant consistently stated that he understood the import of his decision and that it was voluntary. Appellant further confirmed that he was not impaired or under the influence of drugs or alcohol and that his plea had not been coerced. Moreover, Appellant voluntarily signed the negotiated plea agreement before the court and affirmatively stated it was his intent to plead guilty.
Subsequently, on December 28, 2001, Appellant moved to withdraw his plea on the basis that he did not understand the import of his decision and that his attorney represented to him that he would be able to withdraw his plea at any time prior to sentencing. During the hearing on the motion, although unable to exactly remember the questions asked, Appellant repeatedly stated on cross-examination that he understood what he was pleading to and the related consequences during the November 13, 2001 hearing. In addition, because Appellant claimed to have relied upon advice of counsel, substitute counsel was appointed to represent Appellant during this hearing to allow his previous counsel to testify; however, Appellant did not call his previous attorney as a witness. Consequently, no evidence was presented to support Appellant's claims.
The record also reveals that a material witness for the State, who was subpoenaed for trial prior to Appellant's negotiated plea of guilt, would now be difficult to locate, thus prejudicing the State should the matter go to trial.
At the close of the hearing for the motion to withdraw, the trial court reviewed each of the above-mentioned factors on the record. Based upon the record, we find that the trial court granted a full hearing and gave a great deal of consideration to the motion. While Appellant's motion to withdraw his plea was based upon his alleged lack of understanding and representations by his attorney, no evidence appears in the record to support his contention. Therefore, given the record before us, we cannot find that the trial court abused its discretion in denying Appellant's motion to withdraw his plea.
Accordingly, Appellant's second assignment of error is overruled.
 Assignment of Error I
"The prosecutor breached the terms of the negotiated plea agreement after agreeing to stand silent at sentencing."
As part of Appellant's negotiated plea agreement, the State promised to "stand silent except for restitution" in return for Appellant's pleas of guilt. Just prior to the court's sentencing recitation and in hopes to minimize his sentence, Appellant asked the court to consider the fact that the presentence investigation report was unclear as to whether Appellant had physically assaulted the police informant or whether the injuries sustained were a result of the informant's fall. In response, the State commented that "in fact the confidential informant was being beaten in the presence, and in full view, of the officers. And didn't stop until the officers came up and yelled at him — the defendant. He didn't just fall down."
Directly thereafter, the trial court relied upon and justified its decision to impose the maximum prison term on the intimidation charge upon the State's representations, stating: "the facts and circumstances of the intimidation were that the confidential informant, once his identity was learned by defendant, he was chased. He did fall, but the individuals, including the defendant who chased him, ran up to him and started beating. He suffered swelling on the left side of his face, whether it was from the fall or from the beating, it was precipitated by the defendant chasing him and the Court finds again, as was pointed out, the record shows that the defendant was beating and did not stop beating the confidential informant until officers intervened. That's why the Court imposed the longest prison term on the intimidation charge."[8]
Appellant claims that the statements by the State breached the plea agreement to stand silent, which ultimately led to the trial court's imposition of the maximum prison term for the intimidation charge. Based upon the following rationale, we agree and sustain Appellant's first assignment of error.
In Santobello v. New York, the United States Supreme Court stated that the circumstances leading to a defendant's plea of guilt must be attended by certain safeguards, including that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[9] In Santobello, the prosecution, in exchange for the defendant's guilty plea, promised that they would recommend a lighter sentence than what was actually recommended before the trial court. Despite the trial court's explanation that it's sentence was not based upon the prosecution's recommendation, the Supreme Court held: "[w]e need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case[.]"
Herein, the trial court stated on the record that it was imposing the maximum sentence upon Appellant for intimidation of a witness based upon what the record shows as "pointed out" to it by the State. Notably, except for the statements made by the State at sentencing, the record is devoid of any direct evidence that Appellant beat the informant. While the State contends that its' promise to stand silent was intended to imply that it would not recommend a certain sentence, the intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in their agreement.[10] Moreover, contractual language giving rise to doubt or ambiguity must be interpreted against the party who used it.[11] Accordingly, notwithstanding the fact that the State made comments unsupported by the record to which the trial court apparently relied,[12] the prosecution unequivocally promised to stand silent with respect to sentencing in return for Appellant's guilty plea. By its plain terms, this agreement was breached by the State's comments.
Therefore, we find merit to Appellant's arguments and his first assignment of error is sustained. In light of this finding, we must vacate the sentence imposed by the trial court. Since "[t]he remedy for the breach of a plea agreement is "a matter lying within the sound discretion of the trial court, and may be either rescission or specific performance,"[13] we must remand the case for the trial court to determine, in its discretion, whether the State must specifically perform its end of the plea agreement before a different sentencing judge, or whether to further consider allowing Appellant to withdraw his guilty pleas based upon this breach.[14]
Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby vacated and the matter is remanded for further proceedings in accordance with this opinion.
Judgment vacated and cause remanded.
HADLEY and BRYANT, JJ., concur.
[1] State v. Xie (1992), 62 Ohio St.3d 521, 526.
[2] Id. at paragraph one of the syllabus; State v. Schneider (1993), Seneca App. No. 13-92-45.
[3] Id.
[4] Xie, 62 Ohio St.3d at paragraph two of the syllabus.
[5] State v. Mack (Oct. 29, 1998), Allen App. No. 1-98-30.
[6] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[7] State v. Lane (2001), Allen App. No. 1-01-69, citing Statev. Griffin (2001), 141 Ohio App.3d 551, 554.
[8] Emphasis added.
[9] Santobello v. New York (1971), 404 U.S. 257, 262.
[10] State v. Ford (Feb. 18, 1998), Lawrence App. No. 97 CA 32, citingKelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
[11] Ford, supra, citing Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 313.
[12] Compare State v. Gessner (Aug. 14, 1996), Mahoning App. No. 94 C.A. 225, and State v. Camuso (Oct. 26, 1999), Mahoning App. No. 94-CR-91, with State v. Skrip (Apr. 12, 2002), Greene App. No. 2001-CA-74.
[13] Ford, supra, citing State v. Mathews (1982), 8 Ohio App.3d 145,146.
[14] Ford, supra; Santobello, 404 U.S. at 263.